United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM WALSH,<br><br>             Plaintiff,<br><br>v.<br><br>COREPOWER YOGA LLC,<br><br>             Defendant. | Case No.  16-cv-05610-MEJ<br><br>**ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>Dkt. No. 10 |

## INTRODUCTION

Plaintiff William Walsh ("Plaintiff") filed this putative class and collective action against defendant CorePower Yoga LLC ("Defendant" or "CorePower") on October 3, 2016.  *See* Compl., Dkt. No. 1.  The parties have reached a tentative settlement, and pending before the Court is Plaintiff's Motion for an Order (1) conditionally certifying a settlement class and collective action, (2) granting preliminary approval to proposed class action settlement plan, (3) directing dissemination of class notice to class, and (4) setting a final approval hearing and related dates. *See* Mot., Dkt. No. 10.  The Motion came on for hearing on February 2, 2017.  The Court also ordered supplemental briefing (Dkt. No. 17), which Plaintiff submitted (Dkt. No. 20).

Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS** Plaintiff's Motion for the reasons set forth below.

## BACKGROUND

**A.**     **Factual Background**[1]

CorePower owns and operates dozens of yoga studios nationwide.  To maintain its

---

[1] The Court reproduces the facts set forth in Plaintiff's Unopposed Motion, and for ease of reading does not include internal citations to the Complaint.  *See* Mot. at 2-1; *see also* Sagafi Decl. ¶¶ 20-21, Dkt. No. 11.

facilities and until approximately 2015, CorePower created and operated a "Yoga for Trade" ("YFT") program at dozens of studios in California and around the country.  The YFT program was also known as Community Outreach program or the Work for Trade program.  Through the YFT program, CorePower Yoga customers (called "students") worked approximately two- to three-hour scheduled weekly shifts during which they cleaned and performed other project-based work at their local studio.  In exchange, they received free yoga classes.  CorePower did not pay these students (referred to herein as "YFT Cleaners") any wages for their work.

Beginning in late 2013, CorePower phased out the YFT program and replaced it with the "Studio Experience Team" ("SET").  Under the SET program, CorePower students continued to work regular weekly shifts of approximately one-and-a-half hours, but CorePower paid them an hourly wage for their work.  Instead of receiving free yoga classes, however, Plaintiff alleges that SET Cleaners were required to apply a large portion of their wages towards the purchase of a discounted yoga membership at CorePower, which reduced their pay below the applicable minimum wage.  Plaintiff worked for CorePower as both a YFT and SET Cleaner at one of CorePower's studios in Berkeley, California.

Plaintiff contends that CorePower violated wage and hour laws by: (1) failing to pay YFT Cleaners any wages for the hours they worked, in violation of California and the Fair Labor Standards Act ("FLSA") minimum wage provisions; and (2) paying California SET Cleaners subminimum wages by requiring them to purchase yoga memberships as a condition of work.

CorePower denies any wrongdoing.

**B.**     **Settlement Terms**

Defendant has agreed to pay a Total Settlement Amount of $1,650,000.00.  *See* Sagafi Decl., Ex. A (Settlement Agreement) ¶¶ 1.30, 3.1, Dkt. No. 11; *see also* Suppl. Br., Ex. A (Am. Settlement), Dkt. No. 20-1.  After deducting the proposed fees and costs listed in Section B(4) below, the Net Settlement Fund is estimated to be approximately $993,183.  *Id.* ¶¶ 1.19, 3.1, 3.2; Sagafi Decl. ¶ 34.  There are approximately 6,800 members of the FLSA Collective who participated in the YFT program outside California, and approximately 4,900 California Class members who participated in the YFT program at California CorePower studios.  Sagafi Decl. ¶

33.  Additionally, there are approximately 2,700 California Class members who cleaned CorePower studios in California through the SET program, many of whom overlap with the 4,900 individuals in California who worked in the YFT program.  *Id*.

       1.   <u>Settlement Class</u>

The Settlement Agreement defines the "California Class" as all individuals who rendered services to Defendant as YFT Cleaners or SET Cleaners in the State of California during the California Class Period.  Settlement Agreement ¶ 1.3.  The Class Period applicable to the California Class is May 19, 2012 through the date of this Order.  *Id*. ¶ 1.1.

"YFT Cleaners" shall mean all individuals who worked for CorePower cleaning studios in exchange for yoga classes pursuant to its YFT program during the California Class Period.  *Id*. ¶ 1.31.

"SET Cleaners" shall mean all individuals who worked for CorePower cleaning studios in exchange for wages, pursuant to its SET program, during the California Class Period.  *Id*. ¶ 1.27.

       2.   <u>FLSA Collective</u>

The "FLSA Collective" is defined as "all individuals who rendered services to Defendant as YFT Cleaners during the FLSA Class Period."  Individuals within the FLSA Collective are referred to as "FLSA Collective Members."  Settlement Agreement ¶ 1.16.

The Class Period applicable to the FLSA Collective is May 19, 2013 through the date of this Order.  *Id*. ¶ 1.1.

       3.   <u>Distribution of Settlement Payments</u>

          i.   *California Class*

Under the terms of the Settlement Agreement, 65% of the Net Settlement shall be allocated to payments to the California Class (the "California Class Share of Net Settlement Fund"); payments will be made to any members of the California Class who do not timely opt out ("Participating California Class members").  Settlement Agreement ¶¶ 1.23, 3.4.  Each Participating California Class Member shall be assigned 1 point for each eligible workweek between May 5, 2012 and the date of this Order that the member worked as a YFT Cleaner in California.  *Id*. ¶ 3.4(C)(1).  An "eligible workweek" is a week in which a YFT Cleaner had an

United States District Court
Northern District of California

active YFT membership and attended at least one class. *Id*. Each Participating California Class Member shall be assigned 1/8 point for each eligible workweek between May 5, 2012 and the date of this Order that the member worked as a SET Cleaner in California. *Id*. ¶ 3.4(C)(2). All points from Participating California Class Members shall be added to obtain the "Total California Denominator." *Id*. ¶ 3.4(C)(3). Each member's Portion of the California Class Share of Net Settlement Fund that each Participating California Class Member is entitled to shall be determined by dividing the member's points by the Total California Denominator. *Id*. That number shall be multiplied by the California Class Share of Net Settlement Fund to determine each member's Settlement Award. *Id*.

Before fees and costs are deducted, California YFT Class Members will receive $9.34 per workweek worked, and California SET Class Members will receive $1.17 per workweek worked. Sagafi Decl. ¶ 34. The gross fund accounts for approximately 41% of the estimated unpaid minimum wages for California Class Members' YFT workweeks. *Id*. ¶ 38. For SET Class Members, the recovery is approximately 8.6%. *Id*.

Any portion of the California Class Share of Net Settlement Fund that is unclaimed will be distributed among the Active California Class Members based on the calculation method set forth in Section 3.4(G), or if the amount remaining is small enough that redistribution is not sensible or efficient, the unclaimed amount will be donated under the cy pres doctrine to the National Employment Law Project ("NELP"). Settlement Agreement ¶ 3.4(G); Am. Settlement ¶ 2.3(B).

Participating California Class Members may elect to receive a gift card for double the value of their respective Settlement Award, net of applicable withholding, in lieu of a settlement check (the "Gift Card Option"). Settlement Agreement ¶ 3.4(I); Am. Settlement ¶ 2.4. Members may use the gift cards "at participating studios for CorePower classes, memberships, and/or programming." *Id*. (both). At oral argument, Defendant clarified that all studios that are participating in the settlement will be participating in the gift card program. The Amended Settlement clarifies that California Class Members who select the Gift Card Option will receive a voucher that can be exchanged at any CorePower studio (except for franchise-owned studios) for a gift card of the value indicated on the voucher. Am. Settlement ¶ 2.4. Gift cards and vouchers do

not expire, but are subject to limitations.  Settlement Agreement ¶ 3.4(I); Am. Settlement ¶ 2.4.
The revised California Class Notice specifically identifies the non-participating studios.  Am.
Settlement, Ex. C § 7.

ii.   *FLSA Collective*

Thirty-five percent of the Net Settlement shall be allocated to the FLSA Collective on a
claims-made basis; payments will be made to Collective members who timely submit a Consent to
Join and Release Form ("Participating FLSA Collective Member").  Settlement Agreement ¶
3.4(D).  Each Participating FLSA Collective Member shall be assigned 1 point for each eligible
workweek between May 5, 2013 and the date of this Order that the member worked as a YFT
Cleaner.  All points from Participating FLSA Collective Member shall be added to obtain the
"Total FLSA Denominator."  *Id.* ¶ 3.4(D)(2).  Each member's Portion of the FLSA Collective
Share of Net Settlement Fund shall be determined by dividing the number of each Participating
FLSA Collective Member by the Total FLSA Denominator.  *Id.*  That number shall be multiplied
by the FLSA Collective Share of Net Settlement Fund to determine each Participating FLSA
Collective Member's Settlement Award.  *Id.*

Before fees and costs are deducted, Plaintiff represents FLSA Collective YFT Members
will receive $4.60 per workweek worked.  Sagafi Decl. ¶ 34.  The gross fund accounts for
approximately 25% of the estimated unpaid minimum wages for FLSA Collective Members.  *Id.* ¶
38.

During the hearing, Counsel clarified that: (1) the FLSA Settlement Fund would be
distributed to Collective Members without reversion to Plaintiff; and (2) any checks that were
mailed to Collective Members after they submitted a Consent to Join and Release Form but were
not cashed by those Collective Members for more than 90 days would revert to Plaintiff; before
the 90 day-deadline, the Settlement Administrator will attempt to contact Collective Members who
have not cashed their checks to encourage them to do so and offer assistance.  *See* Am. Settlement
¶¶ 2.3(C), 2.5.

4.   Other Payments

The following fees and costs will be paid out of the Total Settlement Amount.

a. *Service Award*

Plaintiff intends to request a $10,000 service award.  Settlement Agreement ¶¶ 3.1, 3.3; *see also* Mot. at 8 (service award will recognize (1) the time and effort Plaintiff expended on behalf of the Class and Collective in assisting counsel prosecute the matter; and (2) "the exposure and risk he incurred in taking a leadership role in the litigation.")

b. *Attorneys' Fees and Costs*

Class counsel also intends to seek no more than one-third of the Total Settlement Amount as an award of attorneys' fees, plus reasonable litigation costs.  Settlement Agreement ¶ 3.2(a). This represents a maximum fee recovery of $550,000; counsel estimates litigations costs will amount to $9,441.86. Sagafi Decl. ¶¶ 34, 39.  Any requested attorneys' fees and costs not approved by the Court will become part of the Net Settlement Fund.  Settlement Agreement ¶ 3.2(b).

c. *Cost of Claims Administrator*

Plaintiff proposes to retain Settlement Services, Inc. ("SSI" or "Claims Administrator") to administer the Settlement.  Sagafi Decl. ¶ 40.  Class Counsel anticipates administration costs will be $69,875. *See id.* ¶ 34.

d. *Errors & Omissions*

The Settlement also provides for $10,000 to cover errors and omissions (the "E&O fund"). Settlement Agreement ¶ 3.1(A).  During the hearing, Counsel clarified the E&O fund was intended to provide relief to Class Members who came forward late in the Settlement process. Counsel further clarified that any unused portion of the E&O fund would revert to be redistributed among Class Members. *See also* Am. Settlement ¶ 2.3(B).

e. *Share of Employment Taxes*

The Participating Class and Collective Members' share of employment taxes will be deducted from the Total Settlement Amount. *Id.*

f. *PAGA*

Seventy-five percent of the total penalties allocated to claims under the California Private Attorneys General Act ("PAGA") will be allocated to the California Labor and Workforce

United States District Court
Northern District of California

Development Agency ("LWDA").  Sagafi Decl. ¶ 34 & n.1; Settlement Agreement ¶ 3.1(A).  This amounts to $7,500.  *Id.*

   5. <u>Notification of Settlement</u>

   Plaintiff proposes that within five business days of this Order, Defendant will provide the Claims Administrator and Class Counsel with a list of Class and Collective members, including identifying and contact information, as well as dates of participation in the YFT and SET programs.  Settlement Agreement ¶ 2.4(A); *see also* Revised Timeline, Am. Settlement, Ex. B.

   Within ten business days of this Order, the Claims Administrator shall mail via First Class U.S. Mail and email, the appropriate Notice of Proposed Settlement to all Class and Collective Members.  *Id.* ¶ 2.4(B); Revised Timeline.  During oral argument, the parties represented Defendant had email addresses for approximately 97% of the Class and Collective Members; and had mailing addresses for 100% of SET participants.  The packet sent to California Class members shall include a statement regarding the Gift Card option (see below) and a postage-paid return envelope.  For Collective Members, the Notice shall include the Consent to Join and Release form.  Settlement Agreement ¶ 2.4(A).  Notice sent by email will provide a summary of the notice documents, including each member's estimated settlement share, and will direct Class and Collective members to a website established by the Claims Administrator and approved by the parties; the website will contain the full text of the notice documents.  *Id.*

   The Claims Administrator shall take reasonable steps to obtain the correct address for any members whose notice is returned as undeliverable, and shall attempt up to two re-mailings per member.  *Id.* ¶ 2.4.

   6. <u>Opt-Outs and Objections</u>

   Collective Members do not opt out of the Settlement; they must affirmatively consent to the terms of the Settlement Agreement by returning valid consent to join and release forms.  If a Collective Member returns a Consent to Join and Release Form that is improperly completed, the Claims Administrator shall send a notice to the Collective Member within five business days indicating the defects and including a new form.  Settlement Agreement ¶ 2.4(D).  Collective Members shall have 60 days to return their Consent to Join and Release forms, or 30 days from re-

United States District Court
Northern District of California

1   mailing, whichever period is longer.  *Id.* ¶ 2.4(D)(2).

2         California Class Members may opt out by mailing a written, signed statement to the

3   Claims Administrator indicating the member is opting out.  Settlement Agreement ¶ 2.5.  The opt-

4   out statement must include the member's name, address, and telephone number, as well as a

5   specific statement: "I elect to exclude myself from the settlement in *Walsh v. CorePower Yoga*

6   *LLC*."  *Id.*  Class Members shall have 60 days from the last date of mailing of the notice packet,

7   but in no event must opt out no later than 7 days before the date of the Fairness Hearing.  *Id.* ¶

8   2.5(A).

9         California Class Members objecting to the Settlement must do so in writing, within 60

10   calendar days after mailing of the notice packet.  *Id.* ¶ 2.6.  The written objection must include the

11   California Class Member's name, address, and telephone number to be valid. It must also contain

12   the words "I object to the settlement in *Walsh v. CorePower Yoga LLC*" and set forth the reasons

13   for the objection.  *Id.*  Class Members who objected in writing may appear at the Fairness Hearing

14   in person or through counsel, but must state their intention to appear at the time they submit their

15   written objections.

16           7.   <u>Final Approval and Judgment Order</u>

17         No later than 14 calendar days before the Fairness Hearing, Plaintiff will submit a Motion

18   for Judgment and Final Approval.  Settlement Agreement ¶ 2.7.  At the Fairness Hearing, the

19   parties will request the Court finally certify the Rule 23 California Class for purposes of

20   settlement; finally certify the FLSA Collective pursuant to 29 U.S.C. § 216(b); enter judgment in

21   accordance with the Settlement Agreement; approve the settlement as fair, adequate, reasonable,

22   and binding on all Participating Class and Collective Members; dismiss the litigation with

23   prejudice; enter an order enjoining Participating Class and Collective Members from pursuing or

24   seeking to reopen released claims; and incorporate the terms of the Settlement and Release.  *Id.* ¶

25   2.8.

26           8.   <u>Releases</u>

27         The Settlement Agreement defines a "Released Party" as "Defendant, as defined herein, as

28   well as Defendant's parent(s), subsidiaries, shareholders, affiliates, insurers, divisions, employee

United States District Court
Northern District of California

1   benefit plans, predecessors, successors and assigns, and all of their past and present officers,

2   directors, stockholders, trustees, attorneys, fiduciaries, heirs, agents, employees, or any one of

3   them." *Id.* ¶ 1.26.

4        Each Participating California Class Member will

5           fully release[] and discharge[] Defendant from all California Labor
        Code claims that were pled in the Class Litigation or that could have

6           been pled in the Class Litigation because they are based on the same
        facts and circumstances as the claims brought in the Class Litigation

7           and that arise out of services rendered/work performed by them to
        Defendant as part of the YFT and/or SET programs, from May 19,

8           2012 through the date of [this Order], including claims for wages,
        penalties, bonuses, attorneys' fees and/or costs.

9   *Id.* ¶ 3.6(A).

10        Each Participating Class and Collective Member who endorses and deposits a settlement

11   check (or who returns a valid and complete Gift Card Statement) "shall also release Defendant

12   from all FLSA claims that are alleged, related to, or that reasonably could have arisen under the

13   same facts alleged in the Class Litigation and that arise out of services rendered to CPY as part of

14   the YFT Program between May 19, 2013 through the date of [this Order], including but not

15   limited to any unpaid wages, penalties, premiums, bonuses, interest, or any kind of relief of any

16   kind available under the FLSA." *Id.*

17       9.   <u>Payment</u>

18        The Claims Administrator shall mail Settlement Awards or gift cards to Participating Class

19   and Collective Members within 14 days of the Effective Date.  Settlement Agreement ¶¶ 3.4(J),

20   1.14 ("Effective Date" is defined as the later of (1) 30 days after the Court's Order granting final

21   approval of the agreement if no appeal is taken from such order; or (2) the Court's entry of a final

22   order and judgment after any appeals are resolved); Revised Timeline.  Any checks issued by the

23   Settlement Administrator shall remain valid and negotiable for ninety (90) days from the date of

24   their issuance and thereafter will be void.  Settlement Agreement ¶ 3.4(K).  The Claims

25   Administrator shall use all reasonable efforts to make additional mailings to Participating Class

26   and Collective Members whose checks are returned as undeliverable.  *Id.* ¶ 3.4(J); *see also* Am.

27   Settlement ¶ 2.5 (Claims Administrator will make reasonable efforts to contact FLSA Collective

28   Members who have not cashed check no later than 15 days before 90 day check-expiration

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1   deadline).  If Participating Class or Collective Members alert the Claims Administrator, Class

2   Counsel, or Defense Counsel that they did not receive their Settlement Awards, the Claims

3   Administrator shall, upon confirming the settlement check in question has not been redeemed, stop

4   payment on the original check and reissue a check.  Settlement Agreement ¶ 3.4(K).  Participating

5   Class and Collective Members shall have 45 days after the date of issue of the replacement date to

6   cash a reissued check, after that time the replacement check will be void.  *Id.*  There are no

7   redemption deadlines for the gift cards; gift cards do not expire.

8        The parties will follow the cy pres provision as to unclaimed amounts for the California

9   Class.  *Id.* ¶ 3.4(G); Am. Settlement ¶ 2.3(B).  Uncashed checks mailed to FLSA Collective

10  members will revert to CorePower.

### LEGAL STANDARD

12       The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class

13  actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Nonetheless, a

14  class action may not be settled without court approval.  Fed. R. Civ. P. 23(e).  When the parties to

15  a putative class action reach a settlement agreement prior to class certification, "courts must

16  peruse the proposed compromise to ratify both the propriety of the certification and the fairness of

17  the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

18       Courts generally employ a two-step process in evaluating a class action settlement.  First,

19  the court must assess whether a class exists.  *Staton*, 327 F.3d at 952 (citing *Amchem Prods. Inc. v.*

20  *Windsor*, 521 U.S. 591, 620 (1997)).  This level of attention "is of vital importance, for a court

21  asked to certify a settlement class will lack the opportunity, present when a case is litigated, to

22  adjust the class, informed by the proceedings as they unfold."  *Id.*

23       Second, the court must determine "whether a proposed settlement is fundamentally fair,

24  adequate, and reasonable," recognizing that "[i]t is the settlement taken as a whole, rather than the

25  individual component parts, that must be examined for overall fairness."  *Hanlon v. Chrysler*

26  *Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  Where the parties reach a settlement prior to class

27  certification, courts apply "a higher standard of fairness and a more probing inquiry than may

28  normally be required under Rule 23(e)."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)

(internal quotations and citation omitted).  The Court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (internal quotations and citation omitted).  "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge."  *Class Plaintiffs*, 955 F.2d at 1276.

Preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *In re Tableware*, 484 F. Supp. 2d at 1079 (internal quotations and citation omitted).  The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with a plaintiff's fiduciary obligations to the class.  *Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").  To assess a settlement proposal, courts must balance a number of factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the state of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026 (citations omitted).  The proposed settlement must be "taken as a whole, rather than the individual component parts" in the examination for overall fairness.  *Id.*  Courts do not have the ability to "delete, modify, or substitute certain provisions" because the settlement "must stand or fall in its entirety."  *Id.*

If the court preliminarily certifies the class and finds the proposed settlement fair to its members, the court schedules a fairness hearing pursuant to Federal Rule of Civil Procedure 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see also In re Google Referrer Header Privacy Litig.*, 2014 WL 1266091, at *2 (N.D. Cal. Mar. 26, 2014).

United States District Court
Northern District of California

**DISCUSSION**

**A.     Class Certification**

The Court has discretion to certify a class action under Rule 23.  *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).  To obtain class certification, the plaintiff must satisfy the four prerequisites identified in Rule 23(a) as well as one of the three subdivisions of Rule 23(b).  *Amchem Prods.*, 521 U.S. at 614.  The four prerequisites are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  *See* Fed. R. Civ. P. 23(a)(1)-(4).  If these requirements are satisfied, the Court then examines whether the plaintiff satisfies one of the requirements of Rule 23(b).  Plaintiff seeks certification under Rule 23(b)(3), which is appropriate where common questions of law or fact predominate and class resolution is superior to other available methods.  Fed. R. Civ. P. 23(b)(3).

1.     Rule 23(a)

The Court first analyzes the Rule 23(a) prerequisites before turning to the Rule 23(b)(3) analysis.

a.     *Numerosity*

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all parties is impracticable."  Fed. R. Civ. P. 23(a)(1).  No specific number is required, although there is a presumption that a class with more than 40 members is impracticable to require joinder.  *Ries v. Ariz. Bevs. U.S. LLC, Hornell Brewing Co.*, 287 F.R.D. 523, 536 (N.D. Cal. 2012); *Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 616 (N.D. Cal. 2014) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." (citation omitted)).

The numerosity requirement is satisfied here as there are approximately 2,700 California Class members who participated in the SET Program, and 4,900 who participated in the YFT Program (many Class members worked in both programs).  Joinder of so many individuals would be impracticable.

b.     *Commonality*

Rule 23(a)(2) requires some "questions of fact and law which are common to the class."

To satisfy this requirement, the claims must "depend upon a common contention" such "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  But this does not necessitate that "every question in the case, or even a preponderance of questions, is capable of class wide resolution." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013).  "So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Id.* (quoting *Wal-Mart*, 564 U.S. at 359).  "[C]ommonality cannot be determined without a precise understanding of the nature of the underlying claims." *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014) (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1194-95 (2013); additional citation omitted)).

This case is based on common questions of both law and fact, including whether Defendant violated California wage and hour laws by failing to pay YFT Cleaners any wages for the hours they worked, and by paying SET Cleaners subminimum wages by requiring them to purchase yoga memberships as a condition of work.  They also include factual predicates such as whether Defendant required SET cleaners to purchase yoga memberships, and whether Defendant was the employer of the YFT and SET cleaners under California law.  The core questions of law and fact are common to Plaintiff and California Class Members.  Thus, Rule 23(a)(2) is satisfied .

### c.    Typicality

Rule 23(a)(3) requires that the representative party's claim be "typical of the claim . . . of the class."  Fed. R. Civ. P. 23(a)(3).  "'Under this rule's permissive standards, representative claims are typical if they are reasonably co-extensive with those absent class members; they need not be substantially identical.'"  *Parsons*, 754 F.3d at 685 (quoting *Hanlon*, 150 F.3d at 1020).  "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  *Id.* (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Typicality is met here: Plaintiff's claims arise from his participation in the SET and YFT programs.  Plaintiff worked in both positions and was subjected to the same practices as the Class

United States District Court
Northern District of California

1   Members he seeks to represent.  His claims are typical because he was subject to the same conduct

2   as other California Class members, and he does not seek any unique or personalized claims.

3   Accordingly, the Court finds Plaintiff satisfies Rule 23(a)(3)'s typicality requirement.

4          *d.*     *Adequacy of Representation*

5        Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

6   interests of the class."  Fed. R. Civ. P. 23(a)(4).  Due process concerns are central to this

7   determination: "[A]bsent class members must be afforded adequate representation before entry of

8   judgment which binds them."  *Hanlon*, 150 F.3d at 1020 (citation omitted).  Two questions must

9   be considered in this determination: "(1) do the named plaintiffs and their counsel have any

10   conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel

11   prosecute the action vigorously on behalf of the class?"  *Id.*  The Court finds Plaintiff meets these

12   requirements.

13        First, there is no evidence Plaintiff or his counsel has any conflicts of interest with other

14   California Class members.  Second, based on the available information, the Court is satisfied

15   Plaintiff and his counsel have and will continue to vigorously prosecute this action on behalf of

16   the California Class.  Plaintiff shares the same interests as the absent class members, namely, he

17   suffered the same type of injury, and he shares a vigorous interest in prosecuting this action.

18        Further, Plaintiff is represented by experienced class action attorneys from Outten &

19   Golden LLP who have qualified as lead class counsel in "hundreds of class and collective actions

20   asserting employment rights on behalf of workers."  Sagafi Decl. ¶¶ 5, 10(a), (b).  The record

21   shows Plaintiff's counsel have a proven track record in the prosecution of class actions as they

22   have successfully litigated and tried many major class action cases.  *Id.* (listing cases).

23   Accordingly, the Court finds both Plaintiff and his counsel are adequate representatives.

24          *e.*     *Summary*

25        In light of the foregoing, the Court finds Plaintiff satisfies Rule 23(a)'s four prerequisites

26   to maintaining a class action.  Accordingly, the Court turns to Rule 23(b) concerning the type of

27   class action that may be maintained.

28

United States District Court
Northern District of California

14

1

2.    Rule 23(b)(3)

2        Plaintiff seeks to certify this proposed class under Rule 23(b)(3), which requires the Court

3    to find that: (1) "the questions of law or fact common to class members predominate over any

4    questions affecting only individual members," and (2) "a class action is superior to other available

5    methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  These

6    provisions are referred to as the "predominance" and "superiority" requirements.  *See Hanlon*, 150

7    F.3d at 1022-23.  The matters pertinent to these findings include: "(A) the class members' interests

8    in individually controlling the prosecution or defense of separate actions; (B) the extent and nature

9    of any litigation concerning the controversy already begun by or against class members; (C) the

10    desirability or undesirability of concentrating the litigation of the claims in the particular forum;

11    and (D) the likely difficulties in managing a class action." *Id.*

12        The Court finds this case meets Rule 23(b)(3)'s requirements.  In this case, Plaintiff and

13    the Class bring claims based on the allegation they were subject to identical or substantially

14    identical pay practices and policies.  The Court can more efficiently answer whether Defendant's

15    practices and policies are lawful through a class action than through case-by-case adjudication.

16    *See, e.g., Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*, 2006 WL 2642528, *10 (N.D.

17    Cal. Sept. 14, 2006) (certifying class action where plaintiff alleged Kinko's classification of class

18    members as exempt employees was unlawful).  These central issues predominate over any

19    individual issue that theoretically might exist.  As to superiority, when "[c]onfronted with a

20    request for settlement-only class certification, a district court need not inquire whether the case, if

21    tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the

22    proposal is that there be no trial." *Id.* at 620.  Thus, any manageability problems that may have

23    existed here are eliminated by the settlement.  As such, the Court finds that Rule 23(b)(3)'s

24    requirements are satisfied for purposed of this Motion.

25        3.    Class Certification Summary

26        In view of the analysis above, the Court finds Plaintiff has satisfied the requirements of

27    Rule 23(a) and (b)(3).  Accordingly, for purposes of this Motion, the Court certifies the stipulated

28    and proposed Settlement Class listed above and appoints Plaintiff's counsel as Class Counsel to

effectuate the Settlement Agreement.

**B.      Preliminary Fairness Determination**

The Court now examines the Settlement Agreement to ensure it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). As noted, when settlement occurs before formal class certification, settlement approval requires a higher standard of fairness in order to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the class. *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012). Nonetheless, "class action settlements do not need to embody the best result for preliminary approval." *In re Google*, 2014 WL 1266091, at *6. The preliminary approval stage is characterized "as an 'initial evaluation' of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties." *In re High-Tech Emp. Antitrust Litig.*, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013) (citation omitted). "At this point, the court's role is to determine whether the settlement terms fall within a reasonable range of possible settlements, with 'proper deference to the private consensual decision of the parties' to reach an agreement rather than to continue litigating." *Id.* (quoting *Hanlon*, 150 F.3d at 1027).

"The Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Angell v. City of Oakland*, 2015 WL 65501, at *7 (N.D. Cal. Jan. 5, 2015) (quoting *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011) and *In re Tableware*, 484 F. Supp. 2d at 1079)). "Closer scrutiny is reserved for the final approval hearing." *Harris*, 2011 WL 1627973, at *7.

1.      <u>Settlement Negotiations</u>

Based on Plaintiff's Motion and the Declaration of Jahan Sagafi, the settlement appears to be the product of serious, informed, non-collusive negotiations. The parties reached terms on the proposed settlement through a series of negotiations between experienced counsel that were conducted at arm's-length and in good faith. Sagafi Decl. ¶¶ 25-29. The parties exchanged data

16

and documents, including detailed mediation briefs and damages analysis, and participated in private mediation with an experienced mediator. *Id.* ¶¶ 26-28. They reached agreement on the material terms of the settlement after the mediation, and continued their arms-length negotiations to finalize the Settlement Agreement. *Id.* ¶ 29. "[S]ettlements are entitled to 'an initial presumption of fairness' because they are the result of arm's-length negotiations among experienced counsel." *In re High-Tech Emp. Antitrust Litig.*, 2013 WL 6328811, at *1 (quoting Newberg on Class Actions § 11:41 (4th ed.)). The process by which the parties reached their settlement weighs in favor of preliminary approval.

    2.    <u>The Presence of Obvious Deficiencies</u>

    The Court must next analyze whether there are obvious deficiencies in the Settlement Agreement.

    First, the proposed Settlement results in a substantial monetary benefit to Class and Collective Members, who will share in proceeds of no less than $993,183. In addition, Class Members are entitled to double the value of their share of the settlement proceeds by electing to receive their settlement through a gift card. This gift card option essentially doubles the potential value of the recovery for California Class Members' portion of the Net Settlement Fund (from the currently estimated $645,775 to approximately $1.3 million). The parties have exchanged informal discovery and damage analysis. *See* Sagafi Decl. ¶¶ 23-27. The amount of discovery and investigation completed prior to reaching a settlement is an important consideration because it demonstrates whether the parties and the Court have sufficient information before them to assess the merits of the claims. *See Lewis v. Starbucks Corp.*, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("approval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases").

    Second, as discussed above, the Settlement Agreement's release language appropriately releases only California Labor Code and FLSA claims based on the same factual predicate as the underlying claims in this case. *See* Settlement Agreement ¶ 3.6(A) & (B). The release only covers claims that are asserted or could have been asserted based on the allegations in the operative Complaint. *Id.* (both). Such a narrow release warrants preliminary approval. *See, e.g.*,

17

*Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action." (internal quotation marks and citations omitted)); *Angell*, 2015 WL 65501, at *7 ("While the scope of the release in the revised settlement agreement is still broad, it is acceptable because the claims released are limited to those against the Defendants, their agents, and their employees arising from the events alleged in Plaintiffs Complaint.'").

Third, any funds not claimed by California Class Members will be redistributed to Active Class Members or to a designated cy pres recipient, NELP, with no reversion to Defendant. The only funds that will revert to Defendant are checks that are not cashed by FLSA Collective Members within 90 days of issuance and after attempts by the Settlement Administrator to help FLSA Collective Members cash their checks. *See Angell*, 2015 WL 65501, at *7 (the settlement agreement should "provide for a cy pres recipient or specify what would happen with the funds if a check is undeliverable or remains uncashed.") As the Ninth Circuit recently reaffirmed, there must be "a driving nexus between the plaintiff class and the cy pres beneficiaries." *Dennis*, 697 F.3d at 865 (internal quotations and citation omitted). Thus, a "cy pres award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group 'too remote from the plaintiff class." *Id.* (internal quotations and citation omitted). However, "settling parties [need not] select a cy pres recipient that the court or class members would find ideal. On the contrary, such an intrusion into the private parties' negotiations would be improper and disruptive to the settlement process." *Lane*, 696 F.3d at 820-21.

The designated cy pres recipient appears to meet the requirements for preliminary approval, as a driving nexus exists as to NELP and Plaintiff's claims. Plaintiff and the Class assert claims under California's Labor Code and the FLSA. NELP advocates for "policies to create good jobs, expand access to work, and strengthen protections and support for low-wage workers and the

unemployed."[2]  The cy pres recipient is thus appropriate, as its objectives are consistent with those of the statutes at issue in this action, and benefits a group not too remote from the plaintiff classes.

Finally, although the Court is not approving attorneys' fees and costs at this stage, the Settlement Agreement provides that any such award to Class Counsel will not exceed one-third of the Total Settlement Fund.  "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Thus, in awarding attorneys' fees under Rule 23(h), "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citations omitted).  The Court expressed some concern that 33 and 1/3 % of the Total Settlement Fund represents an unwarranted upward departure from the norm.  *See id.* ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.").  At the hearing, Class Counsel represented it expected its final lodestar to be approximately $220,000, which would represent a multiplier of 2.3.  This multiplier is within the range of reasonableness for purposes of preliminary approval.  As discussed during the hearing, Class Counsel will file a motion for attorneys' fees to establish the reasonableness of the final amount requested.

Accordingly, the lack of obvious deficiencies in the Settlement Agreement weighs in favor of granting preliminary approval.

3.      Preferential Treatment

The third factor is whether the Settlement Agreement provides preferential treatment to any class member.  Having reviewed the proposed Agreement, the Court finds the proposed allocation of funds between FLSA Collective and California Class Members is rationally related to the relative strengths of Plaintiffs' claims and the higher minimum wage in California.  The Court further finds the proposed allocation between YFT and SET Cleaners is rationally related to: the fact YFT Cleaners were paid no wages, while SET Cleaners received a wage at or above the

_____

[2] *See* http://www.nelp.org/about-us/ (last visited 2/9/2017).

United States District Court
Northern District of California

minimum wage; the dispute surrounding whether SET Cleaners were coerced into buying discounted memberships or whether such memberships were an optional perk; and whether proving any coercion could be done on class-wide basis.  The Court finds the Settlement Agreement does not grant preferential treatment to a subset of Class or Collective Members, but reflects the availability of damages, the strength of the claims, and the likelihood of certification.  *See Rosenburg v. I.B.M. Corp.*, 2007 WL 128232, at *5 (N.D. Cal. Jan. 11, 2007).

The Settlement Agreement authorizes a Service Award to Plaintiff of up to $10,000.  "[T]he Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable."  *Harris*, 2011 WL 1627973, at *9 (citing *Staton*, 327 F.3d at 977).  The Court notes that while the proposed incentive award is not outside the range of reasonableness, it appears excessive in light of how little Plaintiff has had to do here.  However, for purposes of preliminary approval, the Court finds this amount is reasonable; Class Counsel will file a motion for attorneys' fees and Costs to establish the reasonableness of the Service Award prior to final approval.

Accordingly, the Court finds this factor weighs in favor of preliminary approval.

4.    Reasonable Range of Possible Approval

Finally, the Court must determine whether the proposed settlement falls within the range of possible approval.  To determine whether an agreement is fundamentally fair, adequate, and reasonable, the Court may preview the factors that ultimately inform final approval: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.  *Hanlon*, 150 F.3d at 1026; *In re Bluetooth*, 654 F.3d at 946.

Considering all the circumstances, the Court finds these factors all weigh in favor of preliminary approval of the proposed Settlement Agreement.  Plaintiff faced several material risks in continuing to litigate the action, including the risk that Defendant could establish YFT Cleaners

20

1    were independent contractors and not employees; if Defendant succeeded, this would be a

2    complete defense to all claims.  *See* Suppl. Br. at 4.  Because this determination would be fact-

3    intensive, it also could preclude class certification.  *Id.* at 4-5.  As described above, Plaintiff also

4    might encounter difficulty in certifying a SET class given the challenges of establishing coercion

5    on a class-wide basis.  Even if Plaintiff prevailed on certification, the duration and expense of

6    further litigation would be substantial, up to and including appeal.  The amount offered in

7    settlement, especially taking into account the potential doubling available to California Class

8    Members through the gift card option, is substantial.

9           Class Counsel believes the proposed settlement is fair, reasonable, adequate, and is in the

10   best interest of the class in light of all known facts and circumstances.  Sagafi Decl. ¶ 30.  Finally,

11   the Court has not received any reactions from Class Members at this time; the Court awaits those

12   responses in conjunction with the Fairness Hearing.  Thus, the balance of the factors considered by

13   the Court weighs in favor of preliminary approval.

14   **D.     Class Notice**

15           1.     <u>Method of Providing Notice</u>

16           Rule 23(c)(2)(B) provides that "[i]n any class action maintained under subdivision (b)(3),

17   the court shall direct to the members of the class the best notice practicable under the

18   circumstances, including individual notice to all members who can be identified through

19   reasonable effort."  The notice must fairly apprise prospective class members of the terms of the

20   proposed settlement and of their options with respect to the settlement.  *Eisen v. Carlisle &*

21   *Jacquelin*, 447 U.S. 156, 174 (1974).

22           Following preliminary approval, the Claims Administrator will provide notice as described

23   above.  Defendant has mailing addresses for all SET Cleaners and email addresses for 97% of

24   Class and Collective members, the Court finds the combination of USPS and email is the best

25   notice practicable in this case because it provides actual notice of the settlement to all Class

26   Members using the most recent contact information Defendant has obtained from its former and

27   current employees.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) ("The

28   notice must be the best practicable, reasonably calculated, under all the circumstances, to apprise

United States District Court
Northern District of California

21

1    interested parties of the pendency of the action and afford them an opportunity to present their

2    objections." (internal citations and quotation marks omitted)).

3          The Court thus approves the method of notice provided in the Settlement Agreement as the

4    best notice that is practicable under the circumstances.  *See* Fed. R. Civ. P. 23(c)(2)(B).

5          2.      Contents of the Notice

6          As to the contents of the notice to the class, "[t]he notice must clearly and concisely state

7    in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class

8    certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an

9    appearance through an attorney if the member so desires; (v) that the court will exclude from the

10   class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and

11   (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P.

12   23(c)(2)(B).

13         The proposed amended Class Notice complies with all these requirements.  *See* Am.

14   Settlement, Ex. C (Class Notice); *id*., Ex. B (Gift Card Election Statement).  In addition, the notice

15   explains that class members may object, indicates the time and place of the final approval hearing,

16   provides information regarding the attorneys' fees and class representatives' incentive awards, and

17   indicates that additional information regarding the Settlement is available through Class Counsel,

18   whose contact information is provided in the Notice.  The Notice also explains how the settlement

19   fund will be allocated and provides information on how settlement awards will be taxed.  This

20   information is provided in plain English.

21         3.      Costs of Notice Provision and Settlement Administration

22         The Settlement Agreement provides that the estimated Administrative Costs associated

23   with providing Notice and administering payment of claims exceed $69,000, which shall be

24   deducted from the Settlement Fund.  Sagafi Decl. ¶ 34.  At the hearing, Counsel explained that it

25   had obtained bids from several administrators, and that SSI had submitted the winning bid.  In

26   addition, Counsel explained the cost of providing notice in this matter was significant due to the

27   size of the Class and Collective; the need for the Administrator to address tax reporting issues; and

28   the expected challenges of compiling and cleaning up the Class and Collective lists based on

United States District Court
Northern District of California

22

1   Defendant's records.  Finally, Counsel represented it had worked with SSI in the past and trusted

2   its ability to provide excellent customer service to Class and Collective members.  Based on

3   Counsel's representations, the Court finds the costs of notice are reasonable.

4   **B.    FLSA Collective Action**

5           An employee may bring an FLSA collective action on behalf of
6           himself and other "similarly situation" employees who have filed
            written consents to join the action. 29 U.S.C. § 216(b). . . .  Neither
7           the FLSA, nor the Ninth Circuit, nor the Supreme Court has defined
            the term "similarly situated." . . .  [T]he Supreme Court indicated
8           that a proper collective action will address in a single proceeding
            claims of multiple plaintiffs who share "common issues of law and
9           fact arising from the same alleged prohibited activity."  However,
            plaintiffs in a collective action are not subject to the requirements of
10          class actions under Federal Rule of Civil Procedure 23.

11          District courts in the Ninth Circuit have adopted a two-tier approach
            for determining whether proposed collective action plaintiffs are
12          "similarly situated."

13          The first tier is the "notice" stage, at which the court determines
            whether the members of the proposed collective should be notified
14          of the action.  "The question is essentially whether there are
            potentially similarly-situated class members who would benefit from
15          receiving notice at this stage of the pendency of this action as to all
            defendants."

16          This determination is made under a "fairly lenient standard," which
            in the Ninth Circuit typically results in conditional certification.  The
17          plaintiff must make substantial allegations that the putative class
            members were subject to an illegal policy, plan, or decision, by
18          showing that there is some factual basis beyond the "mere
            averments" in the complaint for the class allegations.  These
19          allegations must be supported by declarations.  Unsupported
            allegations of FLSA violations are not sufficient to meet the
20          plaintiffs' burden.

21   *Shaia v. Harvest Mgmt. Sub LLC*, 306 F.R.D. 268, 271-72 (N.D. Cal. 2015) (internal citations

22   omitted).

23          In seeking conditional certification of this case as a collective action under the FLSA, 29

24   U.S.C. § 216(b), Plaintiff has made "substantial allegations that the putative class members were

25   subject to an illegal policy" and has supported these allegations with the Sagafi Declaration.

26   Under the "fairly lenient standard" applicable in the Ninth Circuit, the Court finds conditional

27   certification of this action as an FLSA Collective Action is appropriate.

28          The Collective Action Notice appropriately sets forth in plain English (i) the nature of the

United States District Court
Northern District of California

23

United States District Court
Northern District of California

1  action; (ii) the definition of the collective; (iii) the claims, issues, or defenses; and (iv) the

2  procedure Collective Members must follow to participate in the Settlement and the effect of failing

3  to do so.  *See* Settlement Agreement, Ex. B.  As with the Class Notice, the Collective Action

4  Notice describes the proposed settlement, provides tax information, and identifies contact

5  information for Outten & Golden.

## CONCLUSION

6

7  In light of the analysis above, the Motion for Preliminary Approval of Class Settlement is

8  **GRANTED** as follows:

9  1)  This Order incorporates by reference the definitions in the Settlement Agreement

10  and all terms defined therein shall have the same meaning in this Order as set forth in the

11  Settlement Agreement.

12  2)  The proposed Settlement Class is hereby conditionally certified pursuant to Federal

13  Rules of Civil Procedure 23(a) and (b)(3) for purposes of settlement.  The Settlement Class is

14  defined as: "All individuals who rendered services to Defendant as YFT Cleaners or SET Cleaners

15  in the State of California from May 12, 2012 through the date of this Order."  Certification of the

16  Settlement Class is solely for settlement purposes and without prejudice in the event the

17  Settlement Agreement is not finally approved or otherwise does not take effect.

18  3)  The Settlement Agreement is preliminarily approved as fair, adequate, and

19  reasonable pursuant to Federal Rule of Civil Procedure 23(e).

20  4)  The FLSA Collective is conditionally certified as a collective action under the

21  FLSA, 29 U.S.C. § 216(b).  The FLSA Collective is defined as "all individuals who rendered

22  services to Defendant as YFT Cleaners during the FLSA Class Period."

23  5)  For purposes of the Settlement, the Court appoints and designates Plaintiff William

24  Walsh as class representative for settlement purposes only.

25  6)  For purposes of the Settlement, the Court appoints Jahan Sagafi, Katrina Eiland,

26  and Juno Turner of Outten & Golden LLP as Class Counsel for the Settlement Class.

27  7)  For purposes of the Settlement, the Court appoints SSI as the Claims

28  Administrator.  The Claims Administrator shall be responsible for providing notice to the Class in

the manner set forth in the Settlement Agreement, and of the preliminary and final approval thereof; the Claims Administrator also shall be responsible for providing notice to the FLSA Collective, and of the conditional certification thereof.

8)      With the exception of the date for the Fairness Hearing, the Court adopts the Revised Timeline attached as Exhibit B to the Amended Settlement:

a)  CorePower shall send class list data to the Claims Administrator within 5 business days after entry of the Preliminary Approval Order, or no later than **February 22, 2017**;

b)  The Claims Administrator shall send the Class and Collective Notices within 10 business days after entry of the Preliminary Approval Order in accordance with the terms of the settlement, or no later than **March 1, 2017**;

c)  Class Members shall mail their objections or notifications to opt-out no later than 60 days after the mailing of the Class Notice (i.e., **no later than May 1, 2017**).  FLSA Collective Members shall mail their Consent to Join and Release Forms no later than 60 days after the mailing of the Forms (or 45 days after re-mailing in the case of undeliverable addresses).  Under the terms of the Settlement Agreement, the Claims Administrator shall send copies of each objection to Class Counsel and Defendant's Counsel.  Settlement Agreement ¶ 2.6(A).  In addition, the Court **ORDERS** the Claims Administrator to (i) send copies of each objection to the Court within three calendar days of receipt for filing on the docket in this action; and (ii) **no later than June 1, 2017,** provide the Court with a list of Class Members who have opted out of the Settlement and FLSA Collective Members who have returned Consent to Join and Release Forms (including Consent to Join and Release Forms the Claims Administrator deems not to have been completed as described in the Settlement Agreement);

d)  Plaintiffs' Counsel shall file a motion for final approval, attorneys' fees, and service award no later than 14 days before the objection deadline, or **no later than April 17, 2017**;

1    e)  The Claims Administrator shall provide CorePower with a list of California

2    Class Members who elected gift cards and the settlement award amounts associated

3    with those California Class Members 5 days before the Fairness Hearing;

4    f)  The Court shall hold a **Fairness Hearing on June 15, 2017 at 10:00 a.m.**, in

5    Courtroom B on the 15th floor, United States District Court, Northern District of

6    California, 450 Golden Gate Avenue, San Francisco, California, 94102;

7    g)  Core Power shall fund the Settlement within 10 days after entry of Final

8    Approval;

9    h)  The Claims Administrator shall issue all payments required by the terms of a

10   Final Approval Order within 14 days after the Effective Date.  Pursuant to the

11   terms of the Settlement Agreement, the Effective Date shall be 30 days after the

12   Court grants final approval or, if there is an appeal, the Court's entry of a final

13   order and judgment (Settlement Agreement ¶ 1.14); and

14   i)  The Claims Administrator shall advise Class Counsel and Defendant's Counsel

15   about amounts remaining for redistribution within 120 days of the Effective Date.

16   **IT IS SO ORDERED.**

17

18   Dated: February 14, 2017

19   _____

20   MARIA-ELENA JAMES
     United States Magistrate Judge

United States District Court
Northern District of California